KELLEY v MURRAY

Docket No. 107319. Submitted February 6, 1989, at Lansing. Decided March 20, 1989.

Geneva and Edmond Kelley brought a medical malpractice action in the Genesee Circuit Court against E. C. Murray, D.O. After a jury verdict of no cause of action, the court, Philip C. Elliott, J., entered a judgment for defendant. Plaintiffs appeal, alleging that the court erred in allowing portions of the then-inapplicable tort reform acts to be read to the jury and in allowing extensive cross-examination as to their provisions.

The Court of Appeals *held:*

The act in question was not applicable to the case before the jury and the court erred in allowing reading from it and cross-examination concerning it.

Reversed and remanded.

WITNESSES — EXPERT WITNESSES — JURY INSTRUCTIONS — STANDARD JURY INSTRUCTIONS.

It is error for a trial court to allow the reading of portions of an inapplicable statute regarding the qualifications of an expert witness and the cross-examining of an expert witness as to those qualifications (SJI2d 4.10).

*Levine, Benjamin, Tushman, Bratt, Jerris & Stein, P.C.* (by *Bruce L. Jerris*), for plaintiff.

*Cline, Cline & Griffin, P.C.* (by *Howard D. Cline*), for defendant.

Before: GILLIS, P.J., and SULLIVAN and GRIFFIN, JJ.

GRIFFIN, J. Plaintiffs Geneva and Edmond Kelley appeal as of right from a judgment of no cause

REFERENCES

Am Jur 2d, Expert and Opinion Evidence §§ 26-32, 48-51.

of action entered pursuant to a jury verdict on their claim of medical malpractice against defendant E. C. Murray, D.O. Plaintiffs-appellants allege several errors, one of which we find dispositive. Specifically, we agree with appellants that the lower court committed error requiring reversal by reading to the jury portions of the inapplicable tort reform acts and by permitting extensive cross-examination as to their provisions. We reverse and remand for a new trial.

I

On October 18, 1985, plaintiffs filed a complaint against defendant E. C. Murray, D.O. Plaintiffs' complaint alleged medical malpractice in connection with an October 21, 1983, Caldwell-Louc procedure performed by the defendant which allegedly resulted in plaintiff Geneva Kelley's suffering double vision, numbness on the right side of her face, nausea, recurring pain behind her eye, and lowering of the right eye.

Trial of the malpractice case against otolaryngologist (ear, nose, and throat specialist) Dr. Murray commenced February 4, 1988. During the four day trial, each side presented one expert witness on the issue whether Dr. Murray had breached the applicable standard of care. Plaintiffs' expert was board certified otolaryngologist John Warren Grigg, M.D. Dr. Grigg was licensed to practice medicine in 1956 and board certified in otolaryngology in 1964. From 1981 through the time of trial, Dr. Grigg was an assistant clinical professor at the Wayne State University School of Medicine. His surgical teaching included the Caldwell-Louc procedure utilized in the present case. From 1982 through January 1985, Dr. Grigg also attended law school. Dr. Grigg was duly admitted to the State

Bar of Michigan in May, 1985. At the time of trial, Dr. Grigg testified that he devotes approximately fifty percent of his time to his medical practice and fifty percent to his law practice.

After extensive voir dire, the trial judge qualified Dr. Grigg as an expert witness. The lower court in applying the standards of MRE 702 ruled that Dr. Grigg was qualified by "knowledge, skill, experience, training, or education" to testify as to the alleged breach of the required standard of care. Defendant-appellee did not object below to the qualification of Dr. Grigg as an expert witness.

During the trial, defense counsel, over plaintiffs' objection, extensively cross-examined Dr. Grigg in regard to the medical expert qualification provisions of the tort reform acts of 1986. Although defendant conceded that the acts were inapplicable to the instant case, it was asserted that the new and more stringent qualification provisions were relevant. The argument was made that the jury had a right to know that the law had been changed and, further, that the jury should be allowed to consider the new standards in weighing the quality of the expert testimony.

During cross-examination, defense counsel sought to establish that, *had* the tort reform acts been applicable, Dr. Grigg may not have qualified as an expert witness during the time Grigg was attending law school. Further, it was suggested that Dr. Grigg resumed his medical practice only to qualify as a medical expert under the new act.

The trial judge, after permitting such cross-examination by defense counsel, decided to read to the jury the inapplicable statute:

> *The Court*: Why don't we just tell the jury, so they can understand this, what the statute provides. It does not require that an expert necessar-

ily meet these qualifications in this case because the case was started before the act was passed. But cross out the part having to do with (indiscernible) that doesn't have anything to do with this case simply says, "In an action alleging medical malpractice if the defendant is a specialist a person shall not give expert testimony on the appropriate standard of care unless the person is or was a physician licensed to practice medicine or osteopathic medicine and surgery in this or another state that meets both of the following criteria. First, specializes or specialized at the time of the occurrence, which is the basis for the action, in the same specialty or a related relevant area of medicine or osteopathic medicine and surgery as the specialist who is the defendant in the medical malpractice action. And, second, devotes, or devoted at the time of the occurrence, which is the basis for the action, a substantial portion of his or her professional time to the active clinical practice of medicine or osteopathic medicine and surgery, or to the instruction of students in an accredited medical school, or osteopathic medical school in the same specialty or a related relevant area of health care as the specialist who is the defendant in the medical malpractice action." Now I think the jury can understand the inquiry as a whole lot better because they know what the statute says.

Defense counsel then asked Dr. Grigg whether Grigg would have been qualified as an expert witness prior to the resumption of his medical practice if the new standards had been in effect. Timely objection to the cross-examination and reading of the statute was made by plaintiffs' counsel. On appeal, plaintiffs Kelley argue that their case was severely prejudiced by the introduction of this inapplicable statute. We agree.

II

In 1986, the Michigan Legislature passed a se-

ries of bills commonly referred to as the tort reform acts of 1986. One of the acts (178 PA 1986, effective October 1, 1986) established new and more stringent standards for the qualification of expert witnesses in medical malpractice actions:

> Sec. 2169. (1) In an action alleging medical malpractice, if the defendant is a specialist, a person shall not give expert testimony on the appropriate standard of care unless the person is or was a physician licensed to practice medicine or osteopathic medicine and surgery or a dentist licensed to practice dentistry in this or another state and meets both of the following criteria:
>
> (a) Specializes, or specialized at the time of the occurrence which is the basis for the action, in the same specialty or a related, relevant area of medicine or osteopathic medicine and surgery or dentistry as the specialist who is the defendant in the medical malpractice action.
>
> (b) Devotes, or devoted at the time of the occurrence which is the basis for the action, a substantial portion of his or her professional time to the active clinical practice of medicine or osteopathic medicine and surgery or the active clinical practice of dentistry, or to the instruction of students in an accredited medical school, osteopathic medical school, or dental school in the same specialty or a related, relevant area of health care as the specialist who is the defendant in the medical malpractice action. [MCL 600.2169; MSA 27A.2169.]

The Legislature intended the act to be prospective, not retroactive, in application. Section three of the statute provides that the new standards "shall apply to cases filed on or after October 1, 1986." It is undisputed that the complaint in the present case was filed before this date and therefore the act and its new standards were inapplicable.

### III

The issue whether a witness qualifies as an expert is a question to be decided by the court. Further, the decision of the trial judge to qualify or not to qualify a proposed expert witness will not be overturned absent an abuse of discretion:

> The determination of whether an expert witness is qualified to testify rests within the sound discretion of the trial court, and this Court will not reverse the trial court's determination of a witness's status unless there has been an abuse of that discretion. [*People v Potter*, 115 Mich App 125, 132; 320 NW2d 313 (1982).]

The general rule in Michigan regarding qualification of expert witnesses is MRE 702:

> If *the court* determines that recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. [MRE 702, emphasis added.]

MRE 702 deviates from its federal counterpart FRE 702 by adding after the word "if" the phrase "the court determines that recognized." The Michigan Supreme Court added the above phrase to the proposed rule to emphasize the role of the trial judge. The judge, not the jury, qualifies experts, determines whether an expert is needed to assist the trier of fact, and decides whether the field of expertise is generally recognized and accepted.

Defendant's argument that the inapplicable provisions are relevant to the jury's task of weighing expert testimony is unpersuasive. Michigan's stan-

dard civil jury instructions recommend that "no instruction on 'weighing expert testimony' be given." SJI2d 4.10. The credibility of expert witnesses is addressed by SJI2d 4.01 which covers all witnesses:

> You are the sole judges of the facts in this case and must determine which witnesses you will believe and what weight you will give to their testimony. In doing so you may take into account each witness's ability and opportunity to observe, [*his/or/her*] memory, [*his/or/her*] manner while testifying, any interest, bias or prejudice [*he/or/ she*] may have, and the reasonableness of [*his/or/ her*] testimony considered in the light of all the evidence in the case.

Where the standard jury instructions recommend that no instruction be given, the court shall not give an instruction on the matter unless it specifically finds for reasons stated on the record that the instruction is necessary to accurately state the applicable law. MCR 2.516(D)(3). In the instant case, the trial court advised the jury as to the new law concerning expert witness qualifications even though the statute had no application to the lawsuit. The lower court's action not only obviated the Legislature's intent of not applying the statute retroactively but also muddled the roles of the judge and jury in qualifying experts. Reading the statute to the jury did not materially aid the jury in arriving at a just verdict. On the contrary, the court infused unfair prejudice against plaintiffs' expert witness.

IV

We also hold that the trial court abused its discretion by permitting extensive cross-examina-

tion of Dr. Grigg regarding the inapplicable tort reform acts. The relevance of this line of inquiry was remote at best. The unfair prejudice in applying by implication an inapplicable law substantially outweighed any probative value. MRE 403.

Finally, defendant-appellee Murray argues that the plaintiffs failed to preserve these errors on appeal by failing to request a curative instruction. We disagree. The record reveals that plaintiffs' counsel diligently and repeatedly placed his objections on the record. The issues are accordingly preserved. MCR 2.516(C). Additionally, we note that a curative instruction could not have corrected the error.

Reversed and remanded for a new trial.